UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE ANN SAHAJ,<br><br>  Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | No. 2:16-cv-02563-CKD<br><br><br><br>ORDER |

Plaintiff Nicole Ann Sahaj seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1] In her motion for summary judgment, plaintiff contends that the ALJ failed to carry the administrative burden at step five of the sequential analysis. (ECF No. 11 at 5–10.) The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment. (ECF No. 16.)

After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for

---

[1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 5, 6.)

1

summary judgment, and AFFIRMS the Commissioner's final decision.

I. BACKGROUND

Plaintiff was born on June 12, 1972 and has completed four years of college.[2] (Administrative Transcript ("AT") 208, 223.) Plaintiff applied for DIB on June 12, 2012, alleging that her disability began on January 11, 2010. (AT 21, 208.) Plaintiff claimed that she was disabled due to anxiety, depression, stress, nerve disorder, and neck injury. (AT 222.) After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on October 29, 2014. (AT 40–88.) At the hearing, plaintiff was represented an attorney, Mr. Purdutitch. (Id.) Also present at the hearing was vocational expert ("VE") David Dettmer, who provided testimony in response to questions by both the ALJ and plaintiff's attorney. (AT 73–86.) The ALJ subsequently issued a decision dated February 6, 2015, determining that plaintiff had not been under a disability as defined in the Act, from January 11, 2010, the alleged onset date, through the date of the ALJ's decision. (AT 21–34.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on August 23, 2016. (AT 1–3.) Plaintiff subsequently filed this action on Octover 27, 2016, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II. ISSUES PRESENTED

The sole issue on appeal is whether the ALJ's step five determination is supported by substantial evidence in the record.

III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. DISCUSSION

    A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[3] As an initial matter, the ALJ found that plaintiff met the insured

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a), 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920, 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

1  status requirements of the Act for purposes of DIB through March 31, 2016. (AT 23.) At the

2  first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since

3  January 11, 2010, the alleged onset date. (Id.) At step two, the ALJ determined that plaintiff had

4  the following severe impairments: mood disorder; anxiety disorder; and residuals of cervical

5  fusion. (Id.) However, at step three, the ALJ determined that plaintiff did not have an

6  impairment or combination of impairments that met or medically equaled the severity of an

7  impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 28.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). She can perform work which does not require more than occasional stooping, crouching, kneeling, crawling, climbing, and overhead reaching. She is able to perform tasks that do not require her to rotate her neck more than 45 degrees in both directions more than occasionally. She is able to rotate her trunk if she is required to see objects outside of that 90 degree field. She is able to perform sedentary work if she has the freedom to stand at the workstation in order to stretch and flex her body and joints for a minute each hour. She is able to perform simple and routine work which does not require responding to more than routine changes in the work environment and does not require the use of independent judgment.

(AT 29.)

At step four, the ALJ found, based on the VE's testimony, that plaintiff was unable to perform any past relevant work. (AT 33.) Finally, at step five, the ALJ determined, in reliance on the VE's testimony, that there were jobs that existed in significant numbers in the national economy that plaintiff could perform, considering her age, education, work experience, and RFC. (Id.) Specifically, the VE testified that plaintiff would be able to perform the following representative occupations: (1) hand packager, with 3,000 positions in California and 20,000 positions nationally; (2) small parts assembler, with 2,500 positions in California and 30,000 positions nationally; and (3) information clerk, with 10,000 positions in California and 85,000 positions nationally. (AT 34, 82–83.)

////

Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from January 11, 2010, the alleged onset date, through February 6, 2015, the date of the ALJ's decision. (AT 34.)

B. <u>Plaintiff's Substantive Challenges to the Commissioner's Determinations</u>

Plaintiff's sole argument on appeal is that the ALJ failed to carry the Commissioner's burden at step five because the ALJ relied on the VE's testimony that conflicted with the Dictionary of Occupational Titles ("DOT"), without eliciting sufficient explanation from the VE to justify the deviations from the DOT. (ECF No. 11 at 5–11.)

1. *Whether the issue was preserved for appeal*

As a threshold issue, defendant asserts that the court should not entertain plaintiff's argument because she did not raise this issue at the hearing before the ALJ. (ECF No. 16 at 6–7.) The Ninth Circuit has held that, unless manifest injustice would result, claimants must generally "raise all issues and evidence at their administrative hearings in order to preserve them on appeal," at least when claimants are represented by counsel. <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1115 (9th Cir. 1999). This is because the ALJ as the fact-finder, rather than a federal court reviewing under a substantial evidence standard of review, is the appropriate person to resolve factual and evidentiary inconsistencies, including conflicts concerning statistical evidence. Indeed, at the administrative hearing, the vocational expert is subject to cross-examination by plaintiff's representative.

At the same time, the Ninth Circuit has clarified that "a counsel's failure does not relieve the ALJ of his express duty to reconcile apparent conflicts through questioning: 'When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency.'" <u>Lamear v. Berryhill</u>, 865 F.3d 1201, 1206 (9th Cir. 2017).

Similar to the claimant in <u>Lamear</u>, plaintiff here asserts that the ALJ failed to address apparent conflicts between the VE's testimony and the DOT, an issue that she also raised before the Appeals Council. (<u>See</u> AT 304–305.) Whether or not plaintiff's attorney challenged these

conflicts at the hearing, the ALJ was required to sufficiently develop the record to address any deviation from the DOT. Id. Therefore, plaintiff properly raises an issue that was preserved for appeal.

           2.     *Whether the ALJ's step five determination is supported by substantial evidence in the record*

At step five, "[t]he DOT 'is not the sole source of admissible information concerning jobs'" available in the local and national economy. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). Indeed, "an ALJ may rely on expert testimony [that] contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." Id. "Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony." Light v. Soc. Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997), as amended on reh'g (Sept. 17, 1997) (internal citations omitted).

"When there is an apparent unresolved conflict between VE or VS ["vocational specialist"] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency." SSR 00-4P (S.S.A. Dec. 4, 2000), available at WL 1898704.

Here, the ALJ met his initial burden to develop the record. He began his examination of the VE by specifically addressing SSR 00-4p, when he instructed the VE, "if the response[s] that you give to the questions that we put to you this afternoon are in any way inconsistent or in conflict with the information in the DOT, would you tell me about that please?" (AT 74.) The VE indicated that he would do so. (Id.)

Then the ALJ provided the VE with a hypothetical person who had the same age, education, work experience, and RFC as the plaintiff. (AT 78–82.) In response, the VE provided three representative professions that such a hypothetical person could perform. (AT 82–83.) The ALJ relied on these representative professions when concluding that there were jobs that exist in

significant numbers in the national economy that plaintiff could perform, given her age, education, work experience, and RFC. (AT 33–34.)

While the VE's description of each job conflicted with the DOT, the VE sufficiently explained each conflict, such that record contains persuasive evidence to support the deviation and the ALJ's step five findings. See Johnson, 60 F.3d at 1435; SSR 00-4P.

First, the VE determined that plaintiff could perform the profession of hand packager:

> The DOT generally—that's DOT 920.587-018. In general thought by the DOT to be medium, SVP 2, but the DOT has to pick a [sic] exertional level and they generally pick—and they—what they pick is the highest level of exertion that it's commonly performed at. So, that's why they picked medium, SVP 2. But it exists at all exertional levels and there are sedentary, unskilled hand packagers. Those numbers would be about 3,000 in Californian, about 20,000 in the United States. . .

(AT 82).

With these statements, the VE explicitly acknowledged that plaintiff's RFC would not allow her to perform any jobs that require a medium exertional level. Yet, he also sufficiently explained that the position of hand packager exists in the economy at all exertional levels, and that there are 3,000 sedentary, unskilled hand packager positions in California. The VE appropriately relied upon his experience to reach this conclusion, and the ALJ did not err in relying on his testimony. See Hunter v. Astrue, 254 F. App'x 604, 606 (9th Cir. 2007) ("The ALJ here properly relied on the VE's testimony that in his experience, not all security guard jobs required extensive writing skills").

Second, the VE discussed the position of small parts assembler:

> No, independent judgment, small parts assembly, stand stretch for a minute, I think they could. Stoop, et cetera, you know, I think that is within the restrictions.
>
> [. . .]
>
> 706.684-022, sedentary, SVP 2. I don't see too much of a reduction, so about 2,500 in California, about 30,000 in the United States. . .

(AT 82.)

////

1 Admittedly, the VE's testimony here is not as clear as it could have been.  Still, the VE's

2 reasoning can be sufficiently inferred from the context of his testimony.  See Light, 119 F.3d at

3 793.  In the first paragraph, the VE considered plaintiff's specific RFC when determining whether

4 she could perform the job of small parts assembler.  The VE stated "no independent judgment. . .

5 stand stretch for a minute. . . . [s]toop, et cetera" as short hand for the RFC—no independent

6 judgment; ability to stand and stretch for a minute every hour; occasional stooping, crouching,

7 kneeling, crawling, climbing, and overhead reaching; as well as the neck rotation limitations.

8 (See AT 29, 82)

However, as plaintiff points out, this position is listed as "light" in the DOT, and not

10 "sedentary," as the VE classified the position.  Yet, the VE acknowledged this deviation: "I don't

11 see too much of a reduction, so about 2,500 in California."  (AT 82.)  This statement, taken

12 together with the paragraph above it, indicates that the VE reduced the number of available small

13 parts assembler positions from those that require "light" work to those that require "sedentary"

14 work.  This inference is further supported by the fact that these statements follow immediately

15 after the VE finished explaining that the DOT generally includes the highest exertional level for a

16 certain position, but that the listed exertional level is not necessarily consistent for all such

17 positions throughout the economy.

18 Thus, the VE provided sufficiently persuasive evidence to support his deviation from the

19 DOT.  Indeed, "[a] number of courts have found that were the VE has reduced the number of

20 available jobs to account for [a specific limitation], any error stemming from such testimony is

21 rendered harmless" and, in those circumstances, the ALJ has been found to have met his burden

22 for obtaining persuasive evidence to support a deviation from the DOT.  Bowen v. Colvin, No.

23 2:14-CV-0215 DAD, 2015 WL 5232373, at *6 (E.D. Cal. Sept. 8, 2015) (collecting cases); see

24 also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's

25 decision on account of an error that is harmless").

26 Third, the VE determined that plaintiff could perform the job of "information clerk,

27 somebody at a counter or kiosk handing out literature."  (AT 82.)  The VE explained,

28 ////

> I don't think minimal judgment there, not complicated. 237.367-022, sedentary, SVP 2, about 10,000 in California, about 85,000. I think they meet that hypothetical you just gave me, Judge.

(AT 82–83.)

Here, as plaintiff points out, according to the DOT, an information clerk requires a reasoning level of SVP 4, rather than SVP 2. However, construing these statements in light of the larger context of the VE's entire testimony, it is reasonable to infer that the VE determined that this job does not actually require such heightened reasoning in all instances, and that he accordingly reduced the number of available jobs for information clerk from those requiring SVP 4, to those requiring only SVP 2.

Even assuming that the VE failed to sufficiently explain this particular deviation from the DOT, any error is harmless because, as explained, the VE listed two other jobs that exist in significant numbers in the national economy. See Thomas v. Comm'r of Soc. Sec. Admin., 480 F. App'x 462, 464 (9th Cir. 2012) ("Even if Thomas could not perform [two of] the jobs [listed by the VE] . . . she could perform [one], which existed in significant numbers in the national economy" and which constituted sufficient evidence to uphold the ALJ's decision).

For the reasons discussed above, the ALJ's step five determination is supported by substantial evidence in the record, because the ALJ elicited, and the VE provided, persuasive evidence, to support the deviations from the DOT.

V.  CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 11) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is GRANTED.
3. The final decision of the Commissioner is AFFIRMED.
4. The Clerk of Court shall close this case.

Dated:  March 27, 2018

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

14/ss.16-2563.sahaj.order

9